# EXHIBIT A

**Chart Setting Forth Plaintiffs' Securities Fraud Allegations Pursuant to the Court's December 17, 2015 Order**

*In re Avalanche Biotechnologies Securities Litigation*, No. 15-cv-3185 (JD) (N.D. Cal.)

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| 1 | <u>When</u>: July 30, 2014<br><br><u>Where</u>: 2014 Registration Statement dated July 30, 2014<br><br><u>Speakers</u>:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>(Compl. ¶98) | "Interim drug safety surveillance data received in June 2014 from this ongoing study suggests that AVA-101 continues to be well tolerated."<br><br>* * *<br><br>"Interim drug safety surveillance data received in June 2014 from this ongoing study suggests that AVA-101 continues to be well tolerated.  We expect to receive top-line data from this ongoing Phase 2a trial in mid-2015." | These statements were materially false and/or misleading because they omitted and/or misrepresented the following adverse facts that existed and were known or recklessly disregarded by the speaker at the time of each statement:<br><br>(1) As explained in ¶¶45-55, 58-60, 70, | The speakers acted with scienter in making these statements because:<br><br>The Exchange Act Defendants had knowledge of the Trial Protocol showing that the primary and secondary endpoints were the same because, among other things, (1) Chalberg and Schwartz helped design the AVA-101 Trial (¶41); (2) Avalanche was required to submit the protocol to the TGA (¶¶42-43); Phase 1 |

---

[1]    Capitalized terms, unless otherwise defined, shall have the same meaning as those used in Plaintiff's Consolidated Class Action Complaint ("Complaint").  All "¶___" references herein are to the Complaint.

[2]    Under Ninth Circuit case law, falsity and scienter "are incorporated into a single inquiry, because [they] are generally inferred from the same set of facts."  *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1040 (N.D. Cal. 2007) (citing *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)).  Additionally, courts routinely find that context is important in evaluating falsity.  *See, e.g., Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) ("Some statements, although literally accurate, can become, ***through their context and manner of presentation***, devices which mislead investors.") (emphases added, citations omitted).  Further, the Supreme Court has noted that all facts are important in an analysis of scienter.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007) (The relevant inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.") (emphasis in original).  Therefore, all substantive facts set forth in the Complaint are potentially relevant to the defenses asserted in response thereto.  Plaintiffs note that they have yet to receive Defendants' Motion to Dismiss and defenses.

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening of the retina, evidencing that AVA-101 was not effective in treating wet AMD;<br><br>(2) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD;<br><br>(3) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 | and Phase 2a were conducted under one Trial Protocol (¶46); (3) Chalberg, Schwartz, and Blumenkranz authored and presented abstracts discussing the Trial Protocol and conflating safety and efficacy (¶¶56, 58, 63, 66); and the Exchange Act Defendants spoke at length about the Phase 1 results and protocol (¶¶76, 109-111).<br><br>The Exchange Act Defendants had access to data from Phase 2a of the AVA-101 Trial because, among other things, (1) members of Avalanche's Scientific and Clinical Advisory Boards were the principal trial investigators for Phase 2a (¶40); the AVA-101 Trial was considered Avalanche's Trial (¶44); the AVA-101 Trial was open-label (¶45); the data from AVA-101 was reviewed on a rolling or ad hoc basis (¶¶58, 59, 60); Avalanche admitted to |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | Trial were not experiencing significant improvements in visual acuity scores to justify the increased risk of adverse safety events, evidencing that AVA-101 was not effective in treating Wet AMD; (4) As a result, Avalanche's business and financial prospects concerning AVA-101 were not what the speakers had led the market to believe they were. | receiving interim safety data in June 2014 which would have included efficacy-related data as well (¶¶70, 74, 78, 80, 81, 82). Avalanche and the Exchange Act Defendants all sold large quantities of common stock during the Class Period in amounts and at times that are highly suspicious (¶¶73, 77, 83, 154-172). The Exchange Act Defendants attempted to conceal the adverse results from Phase 2a of the AVA-101 Trial when they announced topline data in June 15, 2015 (¶¶85, 138) and when they represented that Phase 2b of the AVA-101 Trial was still on track (¶¶90-92, 141-143). Chalberg resigned just five weeks after the adverse results from Phase 2a of the AVA-101 |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | | Trial were announced (¶¶89, 173), and Bain resigned several months later (¶¶94, 173).<br><br>AVA-101 was a core operation of Avalanche because Avalanche itself admitted that its business was highly dependent on the success of AVA-101 because the Company would not derive revenue from any other products in the near future. ¶¶31, 147.  As senior level executives and/or directors at Avalanche, a company with only 18 full-time employees, the speakers had access to all material, non-public information concerning the interim data for the AVA-101 Trial.  ¶¶22-25, 147. The Individual Exchange Act Defendants all have extensive experience working in the field of ophthalmology.  ¶¶149-152. |

4

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | | |
| 2 | <u>When</u>: July 30, 2014<br><br><u>Where</u>: 2014 Registration Statement dated July 30, 2014<br><br><u>Speakers</u>:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>(Compl. ¶99) | "Our business currently depends substantially on the success of AVA-101, which is still under development. If we are unable to obtain regulatory approval for, or successfully commercialize, AVA-101, our business will be materially harmed."<br><br>* * *<br><br>"Successful continued development and ultimate regulatory approval of AVA-101 is critical for our future business success. . . .<br><br>The future regulatory and commercial success of this product candidate is subject to a number of risks, including the following:<br><br>we may not be able to provide evidence of efficacy and safety for AVA-101; | Same as above. | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | the results of our clinical trials may not meet the level of statistical or clinical significance required by the FDA or comparable foreign regulatory bodies for marketing approval;"<br><br>* * *<br><br>"Our ability to commercialize our product candidates effectively will depend on several factors, including the following:<br><br>successful completion of preclinical studies and clinical trials, including the ability to demonstrate safety and efficacy of our product candidates"<br><br>* * *<br><br>"[S]uccess in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient safety or efficacy despite having | | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | progressed through initial clinical testing."<br><br>* * *<br><br>"If our proprietary vectors are not shown to be safe and effective in targeting retinal tissue, we may not realize the value of our investment in directed evolution technology."<br><br>* * *<br><br>". . . success in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient safety or efficacy despite having progressed through initial clinical testing. . . .<br><br>We cannot be certain that any of our planned clinical trials will be successful, and any safety concerns observed in any one of our clinical trials in our targeted indications could limit the prospects for regulatory | | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | approval of our product candidates in those and other indications." * * * The FDA or comparable foreign regulatory authorities can delay, limit or deny approval of a product candidate for many reasons, including: we or any of our future development partners may be unable to demonstrate to the satisfaction of the FDA or other regulatory authorities that a product candidate is safe and effective for any indication; the results of clinical trials may not demonstrate the safety or efficacy required by such authorities for approval;" * * * "The degree of market acceptance of our product candidates will depend on a number of factors, including: | | |

8

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | demonstration of clinical efficacy and safety compared to other more-established products;" <br><br> * * * <br><br> "Reimbursement by a third-party payer may depend upon a number of factors including the third-party payer's determination that use of a product candidate is: <br><br> safe, effective and medically necessary;" <br><br> * * * <br><br> "All product candidates are prone to the risks of failure that are inherent in pharmaceutical product development, including the possibility that the product candidate will not be shown to be sufficiently safe and/or effective for approval by regulatory authorities." | | |

9

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| 3 | When: July 30, 2014<br><br>Where: 2014 Registration Statement dated July 30, 2014<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>(Compl. ¶101) | The 2014 Registration Statement was misleading in its entirety. | The Registration Statement *in its entirety* was misleading because, despite the fact that the Company was selling its shares to the public and had a duty to disclose all material non-public information under Rule 10b-5, Avalanche omitted the following adverse facts that then existed and were known or recklessly disregarded by the Company at the time of the statement:<br><br>(1) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | of the retina, evidencing that AVA-101 was not effective in treating wet AMD;<br><br>(2) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD;<br><br>(3) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were not experiencing significant improvements in visual acuity scores to justify the increased | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | risk of adverse safety events, evidencing that AVA-101 was not effective in treating Wet AMD;<br><br>(4) As a result, Avalanche's business and financial prospects concerning AVA-101 were not what the speakers had led the market to believe they were. | |
| 4 | When: September 12, 2014<br><br>Where: 2Q 2014 Form 10-Q filed with the SEC on September 12, 2014<br><br>Speakers:<br>Avalanche<br>Bain<br><br>(Compl. ¶103) | "We believe that this product candidate could transform the treatment paradigm and address the unmet need in the large wet AMD market, . . . ." | These statements were materially false and/or misleading because they omitted and/or misrepresented the following adverse facts that existed and were known or recklessly disregarded by the speaker at the time of each statement: | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | (1) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening of the retina, evidencing that AVA-101 was not effective in treating wet AMD;<br><br>(2) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD;<br><br>(3) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and | |

13

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | 86, Patients in Phase 2a of the AVA-101 Trial were not experiencing significant improvements in visual acuity scores to justify the increased risk of adverse safety events, evidencing that AVA-101 was not effective in treating Wet AMD;<br><br>(4) As a result, Avalanche's business and financial prospects concerning AVA-101 were not what the speakers had led the market to believe they were. | |
| 5 | When: September 12, 2014<br><br>Where: 2Q 2014 Form 10-Q filed with the SEC on September 12, 2014 | "Our business currently depends substantially on the success of AVA-101, which is still under development. If we are unable to obtain regulatory approval for, or successfully commercialize, AVA-101, our | Same as above. | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | Speakers: <br> Avalanche <br> Bain <br><br> (Compl. ¶104) | business will be materially harmed. . . . " <br><br> "The future regulatory and commercial success of this product candidate is subject to a number of risks, including the following: <br><br>     we may not be able to provide evidence of efficacy and safety for AVA-101; <br><br>     the results of our clinical trials may not meet the level of statistical or clinical significance required by the FDA or comparable foreign regulatory bodies for marketing approval;" <br><br>         * * * <br><br> "Our ability to commercialize our product candidates effectively will depend on several factors, including the following: <br><br>     successful completion of preclinical studies and clinical trials, including | | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | the ability to demonstrate safety and efficacy of our product candidates;" <br><br> * * * <br><br> "[S]uccess in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient safety or efficacy despite having progressed through initial clinical testing." <br> * * * <br> "If our proprietary vectors are not shown to be safe and effective in targeting retinal tissue, we may not realize the value of our investment in directed evolution technology." <br><br> * * * <br><br> "We cannot be certain that any of our planned clinical trials will be successful, and any safety concerns observed in any one of our clinical trials in our targeted indications could limit the prospects for regulatory | | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | approval of our product candidates in those and other indications." <br><br> * * * <br><br> "The FDA or comparable foreign regulatory authorities can delay, limit or deny approval of a product candidate for many reasons, including: <br><br> we or any of our future development partners may be unable to demonstrate to the satisfaction of the FDA or other regulatory authorities that a product candidate is safe and effective for any indication; <br><br> the results of clinical trials may not demonstrate the safety or efficacy required by such authorities for approval;" <br> * * * <br><br> "The degree of market acceptance of our product candidates will depend on a number of factors, including: | | |

17

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | demonstration of clinical efficacy and safety compared to other more-established products;" <br><br> * * * <br><br> "Reimbursement by a third-party payer may depend upon a number of factors including the third-party payer's determination that use of a product candidate is: <br><br> safe, effective and medically necessary;" <br><br> * * * <br><br> "All product candidates are prone to the risks of failure that are inherent in pharmaceutical product development, including the possibility that the product candidate will not be shown to be sufficiently safe and/or effective for approval by regulatory authorities." | | |
| 6 | When: September 12, 2014 | "Based on my knowledge, this report does not contain any untrue statement | Same as above. | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | Where: SOX Certifications contained in the 2Q 2014 Form 10-Q filed with the SEC on September 12, 2014<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br><br>(Compl. ¶105) | of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]" | | |
| 7 | When: October 14, 2014<br><br>Where: Registration statement on Form S-8 filed with the SEC on October 14, 2014<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br><br>(Compl. ¶107) | As the registration statement "incorporated by reference" the 2014 Registration Statement and the 2Q 2014 Form 10-Q, it necessarily incorporated the materially false and misleading statements therein.  *See* Statement Nos. 1-6 above. | Same as above. | Same as above. |

19

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| 8 | When: October 16, 2014<br><br>Where: Presentation slide presented at the Ophthalmology Innovation Summit at the American Academy of Ophthalmology 2014 Annual Meeting on October 16, 2014<br><br>Speakers:<br>Avalanche<br>Chalberg<br><br>(Compl. ¶109) | "Potential for One-Time <u>Transformative Treatment</u>"<br><br>"One-time, subretinal injection offers "functional cure" of wet AMD"<br><br>"<u>Promising Clinical Data</u>"<br><br>"Well tolerated with no drug-related adverse events"<br><br>"Subjects gained/maintained vision with no or minimal need for additional treatment over one year"<br><br>"Phase 2a trial fully enrolled in Australia; data expected mid-2015" | Same as above. | Same as above. |
| 9 | When: November 7, 2014<br><br>Where: Presentation slide presented at the to the American Academy of | "Potential for One-Time <u>Transformative Treatment</u>"<br><br>"One-time, subretinal injection offers "functional cure" of wet AMD" | Same as above. | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | Ophthalmology on November 7, 2014<br><br>Speakers:<br>Avalanche<br>Chalberg<br><br>(Compl. ¶111) | "Promising Clinical Data"<br><br>"Well tolerated with no drug-related adverse events"<br><br>"Subjects gained/maintained vision with no or minimal need for additional treatment over one year"<br><br>"Phase 2a trial fully enrolled in Australia; data expected mid-2015" | | |
| 10 | When: November 7, 2014<br><br>Where: Presentation to the American Academy of Ophthalmology on November 7, 2014<br><br>Speakers:<br>Avalanche<br>Chalberg<br><br>(Compl. ¶111) | "And so through this early trial data that we find very encouraging, we're looking forward to following up more patients, . . ." | Same as above. | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| 11 | When: November 12, 2014<br><br>Where: 3Q 2014 Form 10-Q filed with the SEC on November 12, 2014<br><br>Speakers:<br>Avalanche<br>Bain<br><br>(Compl. ¶113) | "We believe that this product candidate could transform the treatment paradigm and address the unmet need in the large wet AMD market, . . ."<br><br>"Interim drug safety surveillance data received in June 2014 from this ongoing study suggests that AVA-101 continues to be well tolerated. . . ." | Same as above. | Same as above. |
| 12 | When: November 12, 2014<br><br>Where: SOX Certifications contained in the 3Q 2014 Form 10-Q filed with the SEC on November 12, 2014<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br><br>(Compl. ¶113) | "Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]" | Same as above. | Same as above. |
| 13 | When: November 12, 2014 | "Our business currently depends substantially on the success of AVA- | Same as above. | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | Where: 3Q 2014 Form 10-Q filed with the SEC on November 12, 2014<br><br>Speakers:<br>Avalanche<br>Bain<br><br>(Compl. ¶114) | 101, which is still under development. If we are unable to obtain regulatory approval for, or successfully commercialize, AVA-101, our business will be materially harmed. . . ."<br><br>"The future regulatory and commercial success of this product candidate is subject to a number of risks, including the following:<br><br>we may not be able to provide evidence of efficacy and safety for AVA-101;<br><br>the results of our clinical trials may not meet the level of statistical or clinical significance required by the FDA or comparable foreign regulatory bodies for marketing approval;"<br><br>* * *<br><br>"Our ability to commercialize our product candidates effectively will | | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | depend on several factors, including the following:<br><br>successful completion of preclinical studies and clinical trials, including the ability to demonstrate safety and efficacy of our product candidates;"<br><br>* * *<br><br>"[S]uccess in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient safety or efficacy despite having progressed through initial clinical testing."<br>* * *<br>"If our proprietary vectors are not shown to be safe and effective in targeting retinal tissue, we may not realize the value of our investment in directed evolution technology."<br><br>* * * | | |

24

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | "We cannot be certain that any of our planned clinical trials will be successful, and any safety concerns observed in any one of our clinical trials in our targeted indications could limit the prospects for regulatory approval of our product candidates in those and other indications." <br><br> * * * <br><br> "The FDA or comparable foreign regulatory authorities can delay, limit or deny approval of a product candidate for many reasons, including: <br><br> we or any of our future development partners may be unable to demonstrate to the satisfaction of the FDA or other regulatory authorities that a product candidate is safe and effective for any indication; <br><br> the results of clinical trials may not demonstrate the safety or efficacy required by such authorities for approval;" <br> * * * | | |

25

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | "The degree of market acceptance of our product candidates will depend on a number of factors, including: demonstration of clinical efficacy and safety compared to other more-established products;" * * * "Reimbursement by a third-party payer may depend upon a number of factors including the third-party payer's determination that use of a product candidate is: safe, effective and medically necessary;" * * * "All product candidates are prone to the risks of failure that are inherent in pharmaceutical product development, including the possibility that the product candidate will not be shown to be sufficiently safe and/or effective | | |

26

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | for approval by regulatory authorities." | | |
| 14 | When: December 18, 2014<br><br>Where: 2015 Registration Statement filed with the SEC on December 18, 2014<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>(Compl. ¶117) | "Interim drug safety surveillance data received in June 2014 from this ongoing study suggests that AVA-101 continues to be well tolerated. . . . "<br><br>"Interim drug safety surveillance data received in June 2014 from this ongoing study suggests that AVA-101 continues to be well tolerated.  We expect to receive top-line data from this ongoing Phase 2a trial in mid-2015." | Same as above. | Same as above. |
| 15 | When: December 18, 2014<br><br>Where: 2015 Registration Statement filed with the SEC on December 18, 2014<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz | "Our business currently depends substantially on the success of AVA-101, which is still under development. If we are unable to obtain regulatory approval for, or successfully commercialize, AVA-101, our business will be materially harmed."<br><br>* * * | Same as above. | Same as above. |

27

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | Schwartz<br><br>(Compl. ¶118) | "Successful continued development and ultimate regulatory approval of AVA-101 is critical for our future business success…<br><br>The future regulatory and commercial success of this product candidate is subject to a number of risks, including the following:<br><br>we may not be able to provide evidence of efficacy and safety for AVA-101;<br><br>the results of our clinical trials may not meet the level of statistical or clinical significance required by the FDA or comparable foreign regulatory bodies for marketing approval;"<br><br>* * *<br><br>"[S]uccess in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient | | |

28

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | safety or efficacy despite having progressed through initial clinical testing." <br><br> * * * <br><br> "If our proprietary vectors are not shown to be safe and effective in targeting retinal tissue, we may not realize the value of our investment in directed evolution technology." <br><br> * * * <br><br> ". . . success in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient safety or efficacy despite having progressed through initial clinical testing… <br><br> We cannot be certain that any of our planned clinical trials will be successful, and any safety concerns observed in any one of our clinical trials in our targeted indications could | | |

29

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | limit the prospects for regulatory approval of our product candidates in those and other indications." <br><br> * * * <br><br> "The FDA or comparable foreign regulatory authorities can delay, limit or deny approval of a product candidate for many reasons, including: <br><br> we or any of our future development partners may be unable to demonstrate to the satisfaction of the FDA or other regulatory authorities that a product candidate is safe and effective for any indication; <br><br> the results of clinical trials may not demonstrate the safety or efficacy required by such authorities for approval;" <br><br> * * * | | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | "The degree of market acceptance of our product candidates will depend on a number of factors, including:<br><br>demonstration of clinical efficacy and safety compared to other more-established products;"<br><br>* * *<br><br>"Reimbursement by a third-party payer may depend upon a number of factors including the third-party payer's determination that use of a product candidate is:<br><br>safe, effective and medically necessary;"<br><br>* * *<br><br>"All product candidates are prone to the risks of failure that are inherent in pharmaceutical product development, including the possibility that the product candidate will not be shown to be sufficiently safe and/or effective | | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | for approval by regulatory authorities." | | |
| 16 | When: December 18, 2014<br><br>Where: 2015 Registration Statement filed with the SEC on December 18, 2014<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>(Compl. ¶120) | The 2015 Registration Statement was misleading in its entirety. | The Registration Statement *in its entirety* was misleading because, despite the fact that the Company was selling its shares to the public and had a duty to disclose all material non-public information under Rule 10b-5, Avalanche omitted the following adverse facts that then existed and were known or recklessly disregarded by the Company at the time of the statement:<br><br>(1) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | Trial were experiencing significant thickening of the retina, evidencing that AVA-101 was not effective in treating wet AMD;<br><br>(2) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD;<br><br>(3) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were not experiencing significant | |

33

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | improvements in visual acuity scores to justify the increased risk of adverse safety events, evidencing that AVA-101 was not effective in treating Wet AMD;<br><br>(4) As a result, Avalanche's business and financial prospects concerning AVA-101 were not what the speakers had led the market to believe they were. | |
| 17 | When: January 16, 2015<br><br>Where: Piper Jaffray report published January 16, 2015 summarizing Avalanche's managements statements<br><br>Speakers:<br>Avalanche | ". . . management notes they do NOT know or see the data" for the 1H15 P2a AVA-101 wet AMD data."<br><br>* * *<br><br>"Management notes they don't know the data: The company is insistent that there is nothing they know about the trial which would change their views or expectations for the study." | These statements were materially false and/or misleading because they omitted and/or misrepresented the following adverse facts that existed and were known or recklessly disregarded by the speaker at the | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | (Compl. ¶122) | | time of each statement:<br><br>(1) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening of the retina, evidencing that AVA-101 was not effective in treating wet AMD;<br><br>(2) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD; | |

35

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | (3) As explained in ¶¶45-55, 58-60, 70, 74, 78, 80-82, 84, and 86, Patients in Phase 2a of the AVA-101 Trial were not experiencing significant improvements in visual acuity scores to justify the increased risk of adverse safety events, evidencing that AVA-101 was not effective in treating Wet AMD;<br><br>(4) As a result, Avalanche's business and financial prospects concerning AVA-101 were not what the speakers had led the market to believe they were. | |
| 18 | When: March 5, 2015 | "The trial included an interim safety analysis which was conducted in June of 2014, several months after dosing | Same as above. | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | Where: Cowen & Company's report dated March 5, 2015 summarizing managements' statements from a lunch held with Chalberg and Bain  Speakers: Avalanche Chalberg Bain  (Compl. ¶125) | in most patients.  Management noted that this safety analysis was successfully passed, with no serious or worrisome adverse events detected.  As the study is ongoing, management said that it does not have knowledge of any adverse event or efficacy data other that the safety data from the June 2014 safety analysis." | | |
| 19 | When: March 5, 2015  Where: 2015 Form 10-K filed with the SEC on March 5, 2015  Speakers: Avalanche Chalberg Bain Blumenkranz Schwartz  (Compl. ¶127) | "Interim drug safety surveillance data received in June 2014 from this ongoing study suggests that AVA-101 continues to be well tolerated." | Same as above. | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | | |
| 20 | When: March 5, 2015<br><br>Where: SOX Certifications contained in the 2015 Form 10-K filed with the SEC on March 5, 2015<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br><br>(Compl. ¶127) | "Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]" | Same as above. | Same as above. |
| 21 | When: March 5, 2015<br><br>Where: 2015 Form 10-K filed with the SEC on March 5, 2015<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz | "Our business currently depends substantially on the success of AVA-101, which is still under development. If we are unable to obtain regulatory approval for, or successfully commercialize, AVA-101, our business will be materially harmed."<br><br>* * *<br><br>"Successful continued development and ultimate regulatory approval of | Same as above. | Same as above. |

38

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | (Compl. ¶128) | AVA-101 is critical for our future business success. . . .<br><br>The future regulatory and commercial success of this product candidate is subject to a number of risks, including the following:<br><br>we may not be able to provide evidence of efficacy and safety for AVA-101;<br><br>the results of our clinical trials may not meet the level of statistical or clinical significance required by the FDA or comparable foreign regulatory bodies for marketing approval;"<br><br>* * *<br><br>"Our ability to commercialize our product candidates effectively will depend on several factors, including the following:<br><br>successful completion of preclinical studies and clinical trials, including | | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | the ability to demonstrate safety and efficacy of our product candidates." <br><br> * * * <br><br> "[S]uccess in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient safety or efficacy despite having progressed through initial clinical testing." <br> * * * <br><br> "If our proprietary vectors are not shown to be safe and effective in targeting retinal tissue, we may not realize the value of our investment in directed evolution technology." <br><br> * * * <br><br> ". . . success in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials | | |

40

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | may fail to demonstrate sufficient safety or efficacy despite having progressed through initial clinical testing. . . .<br><br>We cannot be certain that any of our planned clinical trials will be successful, and any safety concerns observed in any one of our clinical trials in our targeted indications could limit the prospects for regulatory approval of our product candidates in those and other indications."<br><br>* * *<br><br>"The FDA or comparable foreign regulatory authorities can delay, limit or deny approval of a product candidate for many reasons, including:<br><br>we or any of our future development partners may be unable to demonstrate to the satisfaction of the FDA or other regulatory authorities that a product candidate is safe and effective for any indication; | | |

41

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | the results of clinical trials may not demonstrate the safety or efficacy required by such authorities for approval;"<br><br>* * *<br><br>"The degree of market acceptance of our product candidates will depend on a number of factors, including:<br><br>demonstration of clinical efficacy and safety compared to other more-established products;"<br><br>* * *<br><br>"Reimbursement by a third-party payer may depend upon a number of factors including the third-party payer's determination that use of a product candidate is:<br><br>safe, effective and medically necessary;"<br><br>* * * | | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | "All product candidates are prone to the risks of failure that are inherent in pharmaceutical product development, including the possibility that the product candidate will not be shown to be sufficiently safe and/or effective for approval by regulatory authorities." | | |
| 22 | When: April 14, 2015<br><br>Where: Registration Statement filed on Form S-8 with the SEC on April 14, 2015<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>(Compl. ¶132) | As the registration statement "incorporated by reference" the 2015 Form 10-K, which contained a SOX certification signed by Chalberg and Bain, it necessarily incorporated the materially false and misleading statements therein.  *See* Statement Nos. 19-21 above. | Same as above. | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| 23 | <u>When</u>: May 13, 2015<br><br><u>Where</u>: 1Q 2015 Form 10-Q filed with the SEC on May 13, 2015<br><br><u>Speakers</u>:<br>Avalanche<br>Bain<br><br>(Compl. ¶134) | "We believe that this product candidate could transform the treatment paradigm and address the unmet need in the large wet AMD market, . . ."<br>* * *<br><br>"Our business currently depends substantially on the success of AVA-101, which is still under development. If we are unable to obtain regulatory approval for, or successfully commercialize, AVA-101, our business will be materially harmed. . . .<br><br>The future regulatory and commercial success of this product candidate is subject to a number of risks, including the following:<br><br>we may not be able to provide evidence of efficacy and safety for AVA-101;<br><br>the results of our clinical trials may not meet the level of statistical or clinical significance required by the | Same as above. | Same as above. |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | FDA or comparable foreign regulatory bodies for marketing approval;" <br><br> * * * <br><br> "Our ability to commercialize our product candidates effectively will depend on several factors, including the following: <br><br> successful completion of preclinical studies and clinical trials, including the ability to demonstrate safety and efficacy of our product candidates." <br><br> * * * <br><br> "[S]uccess in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient safety or efficacy despite having progressed through initial clinical testing." <br> * * * | | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | "If our proprietary vectors are not shown to be safe and effective in targeting retinal tissue, we may not realize the value of our investment in directed evolution technology."<br><br>* * *<br><br>We cannot be certain that any of our planned clinical trials will be successful, and any safety concerns observed in any one of our clinical trials in our targeted indications could limit the prospects for regulatory approval of our product candidates in those and other indications."<br><br>* * *<br><br>"The FDA or comparable foreign regulatory authorities can delay, limit or deny approval of a product candidate for many reasons, including:<br><br>    we or any of our future development partners may be unable to demonstrate to the | | |

46

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | satisfaction of the FDA or other regulatory authorities that a product candidate is safe and effective for any indication;<br><br>the results of clinical trials may not demonstrate the safety or efficacy required by such authorities for approval;"<br><br>* * *<br><br>"The degree of market acceptance of our product candidates will depend on a number of factors, including:<br><br>demonstration of clinical efficacy and safety compared to other more-established products;"<br><br>* * *<br><br>"Reimbursement by a third-party payer may depend upon a number of factors including the third-party payer's determination that use of a product candidate is: | | |

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | safe, effective and medically necessary;" <br><br> * * * <br><br> "All product candidates are prone to the risks of failure that are inherent in pharmaceutical product development, including the possibility that the product candidate will not be shown to be sufficiently safe and/or effective for approval by regulatory authorities." | | |
| 24 | When: May 13, 2015 <br><br> Where: SOX Certification contained in the 1Q 2015 Form 10-Q filed with the SEC on May 13, 2015 <br><br> Speakers: <br> Avalanche <br> Bain <br> Chalberg <br><br> (Compl. ¶134) | "Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]" | | |