# EXHIBIT A

**Chart Setting Forth The False and Misleading Statements Upon Which Plaintiff's Securities Act Claims Are Based**

*In re Avalanche Biotechnologies Securities Litigation*, No. 15-cv-3185 (JD) (N.D. Cal.)

| Statement or Omission No.[1] | Date(s) and Medium | False and Misleading Statements or Omissions | Reasons Why Statements or Omissions Are Actionable[2] |
|---|---|---|---|
| 1. | When: July 31, 2014<br><br>Where: 2014 Registration Statement dated July 30, 2014, effective July 31, 2014<br><br>¶99 | "Our business currently depends substantially on the success of AVA-101, which is still under development.  If we are unable to obtain regulatory approval for, or successfully commercialize, AVA-101, our business will be materially harmed."<br><br>* * *<br><br>"Successful continued development and ultimate regulatory approval of AVA-101 is critical for our future business success. . . . | These statements were materially misleading because they omitted the following adverse facts that existed at the time of each statement and which evidenced that AVA-101 was ineffective in treating Wet AMD:<br><br>a) As explained in ¶¶48, 49, 59-61, 63-71, 81, 82, 86, 88-96, by the time of the IPO, the patients in the treatment arm were experiencing significant thickening—not thinning—of the retinas; and<br>b) As explained in ¶¶48, 49, 59-61, 63-71, 81, 82, 86, 88-96, by the time of the IPO, many patients in the treatment arm of Phase 2a were requiring multiple rescue injections. |

---

[1]    Capitalized terms, unless otherwise defined, shall have the same meaning as those used in Plaintiff's First Amended Consolidated Class Action Complaint ("FAC").  All "¶___" references herein are to the FAC.

[2]    For the Courts' convenience, Securities Act Plaintiff Srikanth Koneru has included a separate chart for the claims arising under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k, 77l, 77o.  As a Section 11 plaintiff need only plead that the registration statement contained a material omission or misrepresentation, Plaintiff does not need to allege that the Securities Act Defendants acted with scienter with respect to the Securities Act claims.  *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1037-38 (S.D. Cal. 2005).  Plaintiff notes that he has yet to see the arguments in Defendants' Motion to Dismiss and defenses.

# EXHIBIT A

| Statement or Omission No.[1] | Date(s) and Medium | False and Misleading Statements or Omissions | Reasons Why Statements or Omissions Are Actionable[2] |
|---|---|---|---|
| | | The future regulatory and commercial success of this product candidate is subject to a number of risks, including the following:<br><br>we may not be able to provide evidence of efficacy and safety for AVA-101;<br><br>the results of our clinical trials may not meet the level of statistical or clinical significance required by the FDA or comparable foreign regulatory bodies for marketing approval;"<br><br>* * *<br><br>"Our ability to commercialize our product candidates effectively will depend on several factors, including the following:<br><br>successful completion of preclinical studies and clinical trials, including the ability to demonstrate safety and efficacy of our product candidates" | |

2

# EXHIBIT A

| Statement or Omission No.[1] | Date(s) and Medium | False and Misleading Statements or Omissions | Reasons Why Statements or Omissions Are Actionable[2] |
|---|---|---|---|
| | | * * * <br><br> "[S]uccess in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient safety or efficacy despite having progressed through initial clinical testing." <br> * * * <br><br> "If our proprietary vectors are not shown to be safe and effective in targeting retinal tissue, we may not realize the value of our investment in directed evolution technology." <br><br> * * * <br><br> ". . . success in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient safety or | |

# EXHIBIT A

| Statement or Omission No.[1] | Date(s) and Medium | False and Misleading Statements or Omissions | Reasons Why Statements or Omissions Are Actionable[2] |
|---|---|---|---|
| | | efficacy despite having progressed through initial clinical testing. . . . <br><br> We cannot be certain that any of our planned clinical trials will be successful, and any safety concerns observed in any one of our clinical trials in our targeted indications could limit the prospects for regulatory approval of our product candidates in those and other indications." <br><br> * * * <br><br> The FDA or comparable foreign regulatory authorities can delay, limit or deny approval of a product candidate for many reasons, including: <br><br> we or any of our future development partners may be unable to demonstrate to the satisfaction of the FDA or other regulatory authorities that a product candidate is safe and effective for any indication; | |

# EXHIBIT A

| Statement or Omission No.[1] | Date(s) and Medium | False and Misleading Statements or Omissions | Reasons Why Statements or Omissions Are Actionable[2] |
|---|---|---|---|
| | | the results of clinical trials may not demonstrate the safety or efficacy required by such authorities for approval;" <br><br> * * * <br><br> "The degree of market acceptance of our product candidates will depend on a number of factors, including: <br><br> demonstration of clinical efficacy and safety compared to other more-established products;" <br><br> * * * <br><br> "Reimbursement by a third-party payer may depend upon a number of factors including the third-party payer's determination that use of a product candidate is: <br><br> safe, effective and medically necessary;" | |

# EXHIBIT A

| Statement or Omission No.[1] | Date(s) and Medium | False and Misleading Statements or Omissions | Reasons Why Statements or Omissions Are Actionable[2] |
|---|---|---|---|
| | | * * *<br><br>"All product candidates are prone to the risks of failure that are inherent in pharmaceutical product development, including the possibility that the product candidate will not be shown to be sufficiently safe and/or effective for approval by regulatory authorities." | |
| 2. | When: July 31, 2014<br><br>Where: 2014 Registration Statement dated July 30, 2014, effective July 31, 2014<br><br>¶101 | By the time of the IPO, the patients in the treatment arm were experiencing significant thickening—not thinning—of the retinas; and<br><br>By the time of the IPO, many patients in the treatment arm of Phase 2a were requiring multiple rescue injections,<br><br>both of which indicated that AVA-101 was not effective in treating patients with Wet-AMD. | Under Item 303(a) of Regulation S-K (17 C.F.R. § 229.303(a)) issuers are required to disclose events or uncertainties, including any known trends, that have had or are reasonably likely to cause the registrant's financial information not to be indicative of future operating results.  At the time of the IPO, Avalanche and the Individual Securities Act Defendants knew that the patients in the treatment arm of Phase 2a of the AVA-101 were experiencing significant thickening—not thinning—of the retinas and were requiring multiple rescue injections.  The Offering Documents, however, omitted this information.  The adverse events and uncertainties associated with these negative trends were reasonably likely to have a material impact on the Company's profitability and were therefore required to be |

# EXHIBIT A

| Statement or Omission No.[1] | Date(s) and Medium | False and Misleading Statements or Omissions | Reasons Why Statements or Omissions Are Actionable[2] |
|---|---|---|---|
| | | | disclosed in the 2014 Registration Statement (¶101). |
| 3. | Where: July 31, 2014<br><br>Where: 2014 Registration Statement dated July 30, 2014, effective July 31, 2014<br><br>¶102 | By the time of the IPO, the patients in the treatment arm were experiencing significant thickening—not thinning—of the retinas; and<br><br>By the time of the IPO, many patients in the treatment arm of Phase 2a were requiring multiple rescue injections,<br><br>both of which indicated that AVA-101 was not effective in treating patients with Wet-AMD. | Under Item 503 of Regulation S-K (17 C.F.R. §229.503), the registration statement must include "the most significant factors that make the offering speculative or risky" and "[e]xplain how the risk affects the issuer or the securities being offered." Thus, the 2014 Registration Statement was required to include a discussion of the most significant risk facing Avalanche—that at the time of the IPO (a) patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening of the retina; (b) patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections (¶102). |
| 4. | When: July 31, 2014<br><br>Where: 2014 Registration Statement dated July 30, 2014, effective July 31, 2014<br><br>¶102 | By the time of the IPO, the patients in the treatment arm were experiencing significant thickening—not thinning—of the retinas; and<br><br>By the time of the IPO, many patients in the treatment arm of Phase 2a were requiring multiple rescue injections, | Under Item 408 of Regulation C (17 C.F.R. § 230.408(a)), in addition to information expressly required by regulation to be included in a registration statement, "there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading." (¶103). |

# EXHIBIT A

| Statement or Omission No.[1] | Date(s) and Medium | False and Misleading Statements or Omissions | Reasons Why Statements or Omissions Are Actionable[2] |
|---|---|---|---|
| | | both of which indicated that AVA-101 was not effective in treating patients with Wet-AMD. | |

# EXHIBIT A

**Chart Setting Forth Plaintiff's Securities Fraud Allegations Pursuant to the Court's December 17, 2015 Order**
*In re Avalanche Biotechnologies Securities Litigation*, No. 15-cv-3185 (JD) (N.D. Cal.)

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| 1. | <u>When</u>: July 30, 2014<br><br><u>Where</u>: 2014 Registration Statement dated July 30, 2014, effective July 31, 2014<br><br><u>Speakers</u>:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>¶243 | "Interim drug safety surveillance data received in June 2014 from this ongoing study suggests that AVA-101 continues to be well tolerated."<br><br>* * *<br><br>"Interim drug safety surveillance data received in June 2014 from this ongoing study suggests that AVA-101 continues to be well tolerated.  We expect to receive top-line data from this ongoing Phase 2a trial in mid-2015." | These statements were materially false and/or misleading because the interim drug safety surveillance data *also* evidenced the following facts indicating that AVA-101 was ineffective in treating Wet AMD, which were omitted and/or misrepresented and were known or recklessly disregarded by the Exchange Act Defendants at the time of each statement: | The speakers acted with scienter in making these statements because:<br><br>The Exchange Act Defendants had knowledge of the Trial protocol showing that the primary and secondary endpoints were the same because, among other things, (1) Chalberg and Schwartz helped design the AVA-101 Trial (¶160); (2) As a Trial sponsor, Avalanche was required to submit the protocol to the HREC (¶¶161, 164); (3) Phase 1 and Phase 2a were conducted under one Trial protocol (¶166); (4) Chalberg, Schwartz, and |

[1]     Capitalized terms, unless otherwise defined, shall have the same meaning as those used in Plaintiff's First Amended Consolidated Class Action Complaint ("FAC").  All "¶___" references herein are to the FAC.

[2]     Under Ninth Circuit case law, falsity and scienter "are incorporated into a single inquiry, because [they] are generally inferred from the same set of facts." *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1040 (N.D. Cal. 2007) (citing *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)).  Courts routinely find that context is important in evaluating falsity. *See, e.g., Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) ("Some statements, although literally accurate, can become, *through their context and manner of presentation*, devices which mislead investors.") (emphases added, citations omitted).  Lastly, the Supreme Court has noted that all facts are important in an analysis of scienter.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007) (The relevant inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.") (emphasis in original).  Therefore, all substantive facts set forth in the Complaint are potentially relevant to the claims asserted in response thereto.  Plaintiffs note that they have yet to receive Defendants' Motion to Dismiss and defenses.

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | a) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 192-194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening—not thinning—of the retinas; and <br> b) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 192-194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not | Blumenkrantz authored and presented abstracts conflating safety and efficacy data (¶¶194, 197-98, 202-03, 205); and (4) the Exchange Act Defendants spoke at length about the Phase 1 results and protocol (¶¶202-06). <br><br> The Exchange Act Defendants had access to data from Phase 2a of the AVA-101 Trial because, among other things, (1) Rakoczy and Constable, members of Avalanche's Scientific and Clinical Advisory Boards, respectively, were also the principal trial investigators for Phase 2a and as agents of Avalanche, their knowledge is imputed to the Company, or at the very least, they are deemed to have informed the Company of their knowledge (¶¶158-159, 163, 311-13); (2) the protocol for Phase 1 and Phase 2a was the same (¶166) and permitted interim review of at least the safety data throughout the course of the Trial (¶¶177, 188); (3) an abstract in June 2013 shows that Chalberg and Blumenkranz reviewed at least some |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | effective in treating Wet AMD. | of the safety data for 9 patients enrolled in Phase 2a of the Trial; (4) the interim safety surveillance data Avalanche received contained sufficient data to indicate that AVA-101 was not having the desired effect in patients in Phase 2a of the Trial (¶¶198, 210-12); (5) the AVA-101 Trial was open-label (¶¶165, 199); and (6) as sponsor of the Trial, Avalanche was under a duty to monitor the accumulating safety data during the Trial and either monitored the safety data as required or were reckless in failing to do so (¶¶179-98, 308). The Exchange Act Defendants all sold large quantities of common stock during the Class Period in amounts and at times that are highly suspicious.  ¶¶282-303. The Exchange Act Defendants attempted to conceal the fact that AVA-101 was having a negative effect on Trial patients by (1) inconsistently reporting the Trial data, choosing only to report more |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | | data when it benefitted their narrative such as the positive data in the first 8 patients of the Phase 1 portion of the AVA-101 Trial (¶¶201-04, 316); (2) when discussing the "interim drug safety surveillance data," omitting to disclose the endpoint data which they had no previous aversion to reporting and choosing only to report that the data indicated that AVA-101 was well tolerated, when the data indicated more (¶¶211, 317);  (3) never disclosing the fact that the three measures used to determine three safety endpoints were also the three measures used to determine the secondary efficacy endpoint (¶¶167-77, 318); (4) attempting to reel-back expectations in the months leading up to the announcement of the Phase 2a top-line results (¶¶229-30); (5) and attempting to put a positive spin on the Phase 2a topline data when it clearly showed that the drug did not work (¶¶231, 264-67). |

4

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | | Chalberg resigned just five weeks after the adverse results from Phase 2a of the AVA-101 Trial were announced (¶¶304-05), and Bain resigned a few months later (¶¶306).<br><br>AVA-101 was a core operation of Avalanche because Avalanche itself admitted that its business was highly dependent on the success of AVA-101 because the Company would not derive revenue from any other products in the near future (¶¶149-150, 275, 277).  As senior level executives and/or directors at Avalanche, a company with only 18 full-time employees, the speakers had access to all material, non-public information concerning the interim data for the AVA-101 Trial. ¶¶141-47, 275.  The Individual Exchange Act Defendants all have extensive experience working in the field of ophthalmology.  ¶¶278-81.<br><br>The importance of the AVA-101 Trial to the Company and the massive impact approval would have on revenues suggests that the |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | | Exchange Act Defendants were aware of the safety/efficacy data which was freely available to them because (1) at the time of the IPO, AVA-101 was the Company's only product at the clinical trial stage; (2) during the Class Period analysts projected that the peak year sales for AVA-101 would be over $1 billion by 2026; and (3) in 2014, Avalanche generated $572,000 in total revenue. ¶277. |
| 2. | When: July 30, 2014<br><br>Where: 2014 Registration Statement dated July 30, 2014, effective July 31, 2014<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>¶245 | "In humans, AVA-101 has been studied up to one year, and we believe it has the potential to last much longer." | These opinions were either (1) false because the Exchange Act Defendants did not believe the opinion based on their knowledge of the following adverse facts evidencing that AVA-101 was ineffective in treating Wet AMD; or (2) misleading because the Exchange Act Defendants failed to disclose that they had not inquired into the following facts that were then available: | Same as above. |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | a) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening—not thinning—of the retinas; and<br><br>b) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD. | |

7

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| 3. | **When**: July 30, 2014<br><br>**Where**: 2014 Registration Statement dated July 30, 2014, effective July 31, 2014<br><br>**Speakers**:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>¶246 | "Accordingly, we believe that AVA-101 could transform the treatment paradigm and address a significant unmet need in this large wet AMD market." | These opinions were either (1) false because the Exchange Act Defendants did not believe the opinion based on their knowledge of the following adverse facts evidencing that AVA-101 was ineffective in treating Wet AMD; or (2) misleading because the Exchange Act Defendants failed to disclose that they had not inquired into the following facts that were then available:<br><br>   a) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening—not | Same as above. |

8

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | thinning—of the retinas; and <br> b) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD. | |
| 4. | When: October 16, 2014 <br><br> Where: Presentation slide presented at the Ophthalmology Innovation Summit at the American Academy of Ophthalmology 2014 Annual Meeting on October 16, 2014 <br><br> Speakers: Avalanche | "Potential for One-Time Transformative Treatment" <br><br> "One-time, subretinal injection offers 'functional cure' of wet AMD" <br><br> "Promising Clinical Data" <br><br> "Well tolerated with no drug-related adverse events" | These statements were materially false and/or misleading because they omitted and/or misrepresented the following adverse facts that existed at the time of each statement, which evidenced that AVA-101 was ineffective in treating Wet AMD, and were known or recklessly disregarded by | Same as above. |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | Chalberg<br><br>¶248 | "Subjects gained/maintained vision with no or minimal need for additional treatment over one year"<br><br>"Phase 2a trial fully enrolled in Australia; data expected mid-2015" | the speaker at the time of each statement:<br><br>a) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening—not thinning—of the retinas; and<br><br>b) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that | |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | AVA-101 was not effective in treating Wet AMD. | |
| 5. | When: December 18, 2014<br><br>Where: 2015 Registration Statement filed with the SEC on December 18, 2014, effective January 7, 2015<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>¶251 | "Interim drug safety surveillance data received in June 2014 from this ongoing study suggests that AVA-101 continues to be well tolerated."<br><br>* * *<br><br>"Interim drug safety surveillance data received in June 2014 from this ongoing study suggests that AVA-101 continues to be well tolerated.  We expect to receive top-line data from this ongoing Phase 2a trial in mid-2015." | These statements were materially false and/or misleading because the interim drug safety surveillance data *also* evidenced the following facts indicating that AVA-101 was ineffective in treating Wet AMD, which were omitted and/or misrepresented and were known or recklessly disregarded by the speaker at the time of each statement:<br><br>a)  As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 192-194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were experiencing | Same as above. |

11

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | significant thickening—not thinning—of the retinas; and<br><br>b) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 192-194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD. | |
| 6. | When: December 18, 2014<br><br>Where: 2015 Registration Statement filed with the SEC on December 18, 2014, effective January 7, 2015<br><br>Speakers: | "In humans, AVA-101 has been studied up to one year, and we believe it has the potential to last much longer." | These opinions were either (1) false because the Exchange Act Defendants did not believe the opinion based on their knowledge of the following adverse facts evidencing that AVA-101 was ineffective in | Same as above. |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | Avalanche Chalberg Bain Blumenkranz Schwartz ¶253 | | treating Wet AMD; or (2) misleading because the Exchange Act Defendants failed to disclose that they had not inquired into the following facts that were then available: <br><br> a) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening—not thinning—of the retinas; and <br> b) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a | |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD. | |
| 7. | When: December 18, 2014<br><br>Where: 2015 Registration Statement filed with the SEC on December 18, 2014, effective January 7, 2015<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>¶254 | " . . . we believe that AVA-101 could transform the treatment paradigm and address a significant unmet need in this large wet AMD market." | These opinions were either (1) false because the Exchange Act Defendants did not believe the opinion based on their knowledge of the following adverse facts evidencing that AVA-101 was ineffective in treating Wet AMD; or (2) misleading because the Exchange Act Defendants failed to disclose that they had not inquired into the following facts that were then available:<br><br>a)  As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, | Same as above. |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening—not thinning—of the retinas; and<br><br>b) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD. | |
| 8. | When: December 18, 2014<br><br>Where: 2015 Registration Statement filed with the SEC | "Our business currently depends substantially on the success of AVA-101, which is still under development. If we are unable to obtain regulatory approval for, or successfully | These risk factors were materially false and/or misleading because they omitted and/or misrepresented the | Same as above. |

15

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | on December 18, 2014, effective January 7, 2015<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br>Blumenkranz<br>Schwartz<br><br>¶256 | commercialize, AVA-101, our business will be materially harmed."<br><br>* * *<br><br>"Successful continued development and ultimate regulatory approval of AVA-101 is critical for our future business success…<br><br>The future regulatory and commercial success of this product candidate is subject to a number of risks, including the following:<br><br>we may not be able to provide evidence of efficacy and safety for AVA-101;<br><br>the results of our clinical trials may not meet the level of statistical or clinical significance required by the FDA or comparable foreign regulatory bodies for marketing approval;"<br><br>* * * | following adverse facts that existed at the time of each statement, which evidenced that AVA-101 was ineffective at treating Wet AMD, and were known or recklessly disregarded by the speaker at the time of each statement:<br><br>a) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening—not thinning—of the retinas; and<br>b) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, | |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | "[S]uccess in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient safety or efficacy despite having progressed through initial clinical testing." <br><br> * * * <br><br> "If our proprietary vectors are not shown to be safe and effective in targeting retinal tissue, we may not realize the value of our investment in directed evolution technology." <br><br> * * * <br><br> " . . . success in early clinical trials does not mean that later clinical trials will be successful, because product candidates in later-stage clinical trials may fail to demonstrate sufficient safety or efficacy despite having progressed through initial clinical testing… <br><br> We cannot be certain that any of our planned clinical trials will be successful, | 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD. | |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | and any safety concerns observed in any one of our clinical trials in our targeted indications could limit the prospects for regulatory approval of our product candidates in those and other indications."<br><br>* * *<br><br>"The FDA or comparable foreign regulatory authorities can delay, limit or deny approval of a product candidate for many reasons, including:<br><br>we or any of our future development partners may be unable to demonstrate to the satisfaction of the FDA or other regulatory authorities that a product candidate is safe and effective for any indication;<br><br>the results of clinical trials may not demonstrate the safety or efficacy required by such authorities for approval;"<br><br>* * * | | |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | "The degree of market acceptance of our product candidates will depend on a number of factors, including:<br><br>demonstration of clinical efficacy and safety compared to other more-established products;"<br><br>* * *<br><br>"Reimbursement by a third-party payer may depend upon a number of factors including the third-party payer's determination that use of a product candidate is:<br><br>safe, effective and medically necessary;"<br><br>* * *<br><br>"All product candidates are prone to the risks of failure that are inherent in pharmaceutical product development, including the possibility that the product candidate will not be shown to be sufficiently safe and/or effective for approval by regulatory authorities." | | |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| 9. | **When**: January 16, 2015<br><br>**Where**: Piper Jaffray report published January 16, 2015 summarizing Avalanche's managements statements<br><br>**Speakers**: Avalanche<br><br>¶259 | "'. . . management notes they do NOT know or see the data' for the 1H15 P2a AVA-101 wet AMD data."<br><br>* * *<br><br>"Management notes they don't know the data: The company is insistent that there is nothing they know about the trial which would change their views or expectations for the study." | These statements were materially false and/or misleading because they omitted and/or misrepresented the following adverse facts that existed at the time of each statement, which evidenced that AVA-101 was ineffective in treating Wet AMD, and were known or recklessly disregarded by the speaker at the time of each statement:<br><br>a) As explained in ¶¶198 & 223, the Exchange Act Defendants unquestionably had access to the Phase 2a data as evidenced by the IOVS abstract published in June 2013;<br>b) As explained in ¶¶156, 159, 160, 163, 164, 166-168, | Same as above. |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening—not thinning—of the retinas; and <br><br> c) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD. | |
| 10. | <u>When</u>: March 5, 2015 | "As the study is ongoing, management said that it does not have knowledge of | These statements were materially false and/or | Same as above. |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | Where: Cowen & Company's report dated March 5, 2015 summarizing managements' statements from a lunch held with Chalberg and Bain<br><br>Speakers:<br>Avalanche<br>Chalberg<br>Bain<br><br>¶262 | any adverse event or efficacy data other that the safety data from the June 2014 safety analysis." | misleading because they omitted and/or misrepresented the following adverse facts that existed at the time of each statement, which evidenced that AVA-101 was ineffective in treating Wet AMD, and were known or recklessly disregarded by the speaker at the time of each statement:<br><br>a) As explained in ¶¶198 & 223, the Exchange Act Defendants unquestionably had access to the Phase 2a data as evidenced by the IOVS abstract published in June 2013;<br>b) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, | |

# EXHIBIT A

| Statement No.[1] | The Speaker(s), Date(s), and Medium | False and Misleading Statements | Reasons Why Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter[2] |
|---|---|---|---|---|
| | | | 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were experiencing significant thickening—not thinning—of the retinas; and<br><br>c) As explained in ¶¶156, 159, 160, 163, 164, 166-168, 170-178, 194, 199, 209-212, 223-228, 231-234, & 238, patients in Phase 2a of the AVA-101 Trial were requiring multiple rescue injections, evidencing that AVA-101 was not effective in treating Wet AMD. | |